IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

          Plaintiff

v.

CHRISTOPHER C. BELL,

          Defendant.

REPORT AND
RECOMMENDATION

09-cr-19-bbc
_____

REPORT

The grand jury has returned a two-count indictment charging defendant Christopher Bell with distributing crack cocaine and possessing crack cocaine with intent to distribute it. Before the court is Bell's motion to quash a February 12, 2009 traffic stop and to suppress all physical and testimonial evidence derived therefrom. *See* dkt. 12. For the reasons stated below, I am recommending that this court deny Bell's motion.

On May 12, 2009, this court held an evidentiary hearing on Bell's motion. Having heard and seen the witness testify, having reviewed the exhibits, and having made credibility determinations, I find the following facts:

**Facts**

In 2002 Brian Dorenzo was convicted of drug crimes in this court and was sentenced to prison for what ended up being about eight years. Sometime this past winter the Bureau of Prisons placed Dorenzo in a halfway house and he began working as an informant for the Rock County Safe Streets Task Force. In January 2009, Dorenzo fingered Christopher Bell–who also had been convicted of drug crimes in this court –as someone who again was trafficking drugs in

Beloit. Dorenzo agreed to work as an active informant and made a recorded telephone call to Bell to arrange a fronted crack purchase from him. They arranged a January 13, 2009 meeting.

Agents searched Dorenzo and his car, then surveilled Dorenzo's meeting with Bell in the Wal-Mart parking lot in Beloit. Bell drove to the meeting in his silver Mitsubishi. After the meeting, agents rendezvoused with Dorenzo, who turned over two eightballs of crack cocaine that he reported having received from Bell. Dorenzo was to pay for the drugs at their next meeting. On January 14, 2009, while under surveillance, Dorenzo met with Bell to square the front. Dorenzo then met with agents and reported that he had paid Bell for the crack cocaine.

Another phase of the task force's investigation of Bell involved surveillance of a house at 823 Merrill Avenue in Beloit from which agents suspected that Bell was conducting drug business. On February 12, 2009, agents were conducting surveillance while Officer McMahon waited nearby in a "stop car," an unmarked squad car that Officer McMahon would use to conduct a traffic stop of Bell if appropriate circumstances presented themselves.

Agents observed Bell and two young men leave the house, enter the Bell's Mitsubishi and drive toward downtown Beloit. Officer McMahon began following Bell's car, watching for any traffic violation that would provide a pretext for stopping Bell. Other task force agents and police officers were driving in the vicinity, maintaining radio contact with each other as events unfolded.

Bell drove south on Pleasant Street until he got to the intersection with Broad Street, which was controlled by a traffic light. The traffic light was green in favor of Pleasant Street; Bell stayed in the left of the two lanes preparing to turn left onto Broad Street, waited for traffic to clear, then turned left. The traffic signal turned red prior to Bell completing his turn and clearing the intersection.

This was enough of a violation to satisfy Officer McMahon. He followed Bell left onto Broad Street, activated his emergency lights, and radioed dispatch to alert other agents that he was attempting to stop Bell's car. Officer McMahon caught up to the Mitsubishi with his emergency lights activated but Bell did not pull over (neither did he speed up or attempt to elude). The front passenger door opened and Officer McMahon saw a hand come out and drop a white substance onto the roadway; the door then shut. Suspecting that the dropped substance was crack cocaine, Officer McMahon radioed his observation to the other agents and directed them to stop and retrieve what had been dropped.

Officer McMahon then turned on his siren in an attempt to pull over the Mitsubishi. The passenger door opened again and a plastic bag came out. A block and a half later, Bell finally pulled over. By the time Officer Dorenzo actually stopped the Mitsubishi and drew his weapon, the basis for his stop had transmogrified into an investigation of the suspected crack being dropped out of the the moving car.

Officer McMahon drew his firearm and ordered all three occupants of the car to put their hands where he could see them. Other agents pulled up in their vehicles and emptied Bell's car. All of the surveillance officers participating in the traffic stop also had participated in and knew about Dorenzo's controlled purchase of crack from Bell.[1] Agents identified Bell as the driver, his teenage son as the front seat passenger, and a second teenager as the rear seat passenger. Agents took Bell into custody while Officer McMahon began searching the Mitsubishi. Officer McMahon collected loose chunks of crack off of the car floor and from under the floor mats. He also found four boxes of baking soda in the trunk. That agents who had traveled to the scene where items

---

[1] Hearing Transcript, dkt. 29, at 43.

had been dropped from the Mitsubishi collected about 8 grams of crack cocaine scattered across a half-block length of the street.

Task force agents transported Bell to the police station where he apparently made a self-incriminating statement.

## ANALYSIS

"Suppression of evidence . . . has always been our lasts resort, not our first impulse."

*Hudson v. Michigan,* 547 U.S. 586, 591 (2006).

Bell's theory in support of suppression is that his February 12, 2009 stop, arrest and the subsequent search of his car were constitutionally unreasonable. I will address the substance of this challenge shortly, but I start by noting that Bell's challenge probably is foreclosed by the Supreme Court's recent retrenchment of the exclusionary rule, which now is reserved for cases of deliberate, reckless or grossly negligent conduct by law enforcement officers. *See Herring v. United States*, ___ U.S. ___, 126 S.Ct. 695, 702 (2009). As is clear from the facts above–or at least, clear to the court and set forth here as the court's conclusion– Officer McMahon and the other task force agents did not engage in deliberate, reckless or grossly negligent conduct when they stopped Bell, arrested him, and searched his car. I could amplify this finding if it were the sole basis for recommending denial of the motion, but because district courts do not yet have circuit-level guidance on how to apply *Herring*, and because neither side briefed *Herring*, I will relegate my *Herring* analysis to a secondary, alternate holding and give primacy to the parties' briefed arguments.

4

First, Bell disputes whether his driving violated Wisconsin's traffic code. Although Bell appears to be correct in arguing that he violated no statute by completing his turn after the light red, as the government points out, there is a statute that requires a vehicle facing a yellow traffic signal to stop before entering the intersection unless too close to stop safely. *See* Wis. Stat. § 346.37(1)(b). Officer McMahon testified that Bell was waiting behind the stop line to turn, then entered the intersection to make his turn when the light turned yellow. (Transcript, dkt. 29, at 32-33). Bell swears in his affidavit that he entered the intersection while the light still was green and turned while the light still was green. The truth probably lies between these two versions and I have not chosen between them. I don't doubt that the light turned red before Bell completed his turn, but I do doubt whether he waited behind the stop line without entering the intersection before initiating his turn, a hyper-cautious and unlikely driving maneuver.

But it doesn't matter because Officer McMahon had probable cause to arrest Bell as of January 14, 2009 and that probable cause was amplified by what transpired while Officer McMahon tried to pull over Bell's car. Let's start by defining probable cause. In *Holmes v. Village of Hoffman Estate*, 511 F.3d, 673 (7th Cir. 2007), a civil false arrest case, the court provided this gloss:

> A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonable support a belief that the individual has committed, is committing, or is about to commit a crime. Probable cause requires more than a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction. Probable cause is assessed objectively: a court looks at the conclusions that the arresting officer reasonably might have drawn from the information known to him rather than his subjective reasons for making the arrest. In making that assessment, the court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth. A police officer may of course exercise common sense and draw upon his training and experience

5

> in evaluating the totality of circumstances confronting him, and a court must likewise make allowances for such judgments in deciding what the arresting officer reasonably might have concluded about the facts.

511 F.3d at 679.

*See also United States v. Carmel*, 548 F.3d 571, 576 (7th Cir. 2008) (search warrant case)("To show probable cause requires more than bare suspicion but need not be based on evidence sufficiently to support a conviction, nor even a showing that the officer's belief is more likely true than false"); *United States v. Jennings*, 544 F.3d 815, 819 (7th Cir. 2008) (observing a suspect attempt to hide a bag of what looked like crack cocaine when the police approached his car provided probable cause to arrest the suspect).

Dorenzo's purchase of crack cocaine from Bell provided Officer McMahon–and his fellow task force officers–with more than enough evidence to provide probable cause to arrest Bell. Although no one testified to this effect, I surmise that the task force's traffic stop gambit was intended by the task force to recover new evidence from Bell that would provide an independent basis to arrest him, thereby camouflaging Dorenzo's involvement as a government snitch. But it was completely unnecessary to provide a reasonable basis to stop Bell's car and take him into custody.

And then there's the 8 grams of crack dropped out of the car while Officer McMahon tried to pull it over. As a preliminary matter, the recovered crack is not even subject to a probable cause analysis because, as abandoned property, it receives no Fourth Amendment protection. Fourth Amendment protection only extends to places and items for which a person has a reasonable expectation of privacy, and no person can have a reasonable expectation of privacy in an item that he has physically relinquished. *See United States v. Pitts*, 322 F.3d 449, 455-56 (7th Cir. 2003);

6

*United States v. Basinski*, 226 F.3d 829, 836 (7th Cir. 2000).  Because the crack was abandoned before any Fourth Amendment stop had occurred, *see Belcher v. Norton*, 497 F.3d 742, 747-48 (7th Cir. 2007) (citing *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991), Bell has no basis to seek suppression of this evidence.  Indeed, his questions during the suppression hearing suggest that he is not even claiming standing to seek suppression;  one might infer that Bell is laying off the drugs on his own teenage son.  *See* Transcript, dkt. 29,  at 37-38.

Circling back to probable cause, Officer McMahon's observation of the drug dump would have created probable cause to stop and search the car in isolation, *See Jennings*, 544 F.3d at 819.  Bell demurs, arguing that Officer McMahon did not have sufficient information to draw reasonable inferences in this regard.  Bell is incorrect.  As a trained and experienced drug task force agent who already had probable cause that Bell recently had sold crack to an informant,  Officer McMahon was completely justified concluding that he was witnessing crack being tossed from the Mitsubishi in anticipation of an imminent traffic stop.  What else could it be?  Common sense suggests no alternatives and neither does Bell.  Bell is reduced to labeling this as "Officer McMahon's . . .own personal suspicion . . .."  Reply, dkt. 36, at 3.  Under the totality of circumstances known to Officer McMahon, this characterization grossly undersells the weight and significance of McMahon's belief.  *Cf. United States v. Caldwell*, 423 F.3d 754, 760-61 (7th Cir. 2005)( a divide-and-conquer approach contravenes the longstanding rule that courts analyze probable based on the totality of circumstances).

To the same effect, Bell offers a punctilious, almost talismanic interpretation of the resulting stop and arrest, arguing if there was no traffic violation, then the stop was unreasonable because Officer McMahon did not sufficiently articulate the drug evidence as the basis for his

7

arrest. Indeed, continues Bell, because some other agent actually placed Bell under arrest, we really have no idea why he was arrested, which renders the entire encounter constitutionally unreasonable.

Starting with the last point, it's usually the government advocating that no arrest occurs until someone puts cuffs on the suspect and that all of that preliminary business involving drawn guns, barked orders to show your hands and not to move, and perhaps being directed face-first to the ground isn't actually a restraint on the suspect's freedom equivalent to formal arrest. But today, this is the defendant's argument, with Bell contending that there is no evidence as to why he was arrested by some unknown later-arriving agent. Thus Officer McMahon's explanation at the evidentiary hearing is incomplete and causally irrelevant. Bell is incorrect. Officer McMahon, by holding Bell at gunpoint and directing everyone to show his hands until backup arrived, had subjected Bell to sufficient indicia of restraint to constitute a arrest. Officer McMahon also sufficiently articulated the basis for this arrest:

THE COURT:  . . . I'm not asking why you turned the lights on. I'm asking at the time that you got the felony stop going and you're drawing your weapon and other officers or task force agents are actually pulling people out of the car, what is the basis for the arrest?  . . .

THE WITNESS:  At that point, it was the suspected cocaine he threw out of the car or the people in the car being detained for investigation. Also within the back of our minds we already knew we made . . . one buy from him.
\* \* \*

. . . Everyone knew that Mr. Bell was in the car and there was already people that could arrest him for those charges of the prior buy we made from him.

Transcript, dkt. 29, at 42-43.

8

There really is no need to rely on the collective knowledge doctrine here, but even if there were, the criteria are met. Contrary to Bell's argument, the doctrine does not require the officer ordering an arrest to communicate his reasons. What is required is that the officers are in communication and that one of them has the requisite knowledge. *See United States v. Whitaker*, 546 F.3d 902, 905 (7th Cir. 2008). It is a doctrine of constructive knowledge that imputes the knowledge of each officer to the rest of the officers working and communicating with each other. Bell's approach turns the doctrine on its head by requiring that the arresting officer have *actual* knowledge–via hearsay from a fellow officer–as to why he is arresting the suspect. But even *this* standard appears to be met here: Officer McMahon broadcast his observation of the drug dump prior to stopping Bell's car, so everyone knew what had happened. Further, Everyone on the scene also had participated in Dorenzo's undercover buy a month earlier. Whoever put handcuffs on Bell personally had enough information to justify an arrest. But as noted above, for Fourth Amendment purposes, the arrest occurred upon Officer McMahon holding Bell at gunpoint.

As for the vehicle search that followed Bell's arrest, given the drug dump that had occurred just moments before, the agents clearly had probable cause to search the car for additional contraband. An officer does not need a warrant to search a vehicle so long as has probable cause to believe that it contains contraband or evidence of a crime. *United States v. Loera*, 565 F.3d 406, 411 n.3 (7th Cir. 2009). As with probable cause to support an arrest, probable cause to support a search requires sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. The inquiry is practical, not technical. *United States v. Watzman*, 486 F.3d 1004, 1007 (7th Cir. 2007). I already have rejected Bell's argument that McMahon was jumping to unreasonable conclusions; quite the contrary, the most reasonable and logical

conclusion that he could draw was that someone in the car was tossing contraband before getting caught *in flagrante delicto*. For the purposes of searching the car, it didn't matter which of the occupants did the dropping. The fact that anyone in the car was doing this provided probable cause for the subsequent search.

## RECOMMENDATION

Pursuant to 42 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court deny defendant Christopher Bell's motion to suppress evidence.

Entered this 5th day of June, 2009.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

June 5, 2009

David Reinhard
Assistant U.S. Attorney
P.O. Box 1585
Madison, WI 53701-1585

Alan G. Habermehl
Kelly, Habermehl & Bushaw
145 West Wilson Street
Madison , WI 53703

     Re:   United States v. Christopher Bell
           Case No. 09-cr-019-bbc

Dear Counsel:

     The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

     The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

     In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before June 15, 2009, by filing a memorandum with the court with a copy to opposing counsel.

     If no memorandum is received by June 15, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

                        Sincerely,

                        /s/ M.Hardin for
                        Connie A. Korth
                        Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge